Filed 2/18/22  P. v. Jones CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANTHONY JONES, <br><br> Defendant and Appellant. | F082281 <br><br> (Super. Ct. No. BF118151B) <br><br><br> **OPINION** |

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Spolin Law and Aaron Spolin for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>    Before Hill, P. J., Levy, J. and De Santos, J.

## INTRODUCTION

In 2010, a jury convicted petitioner Anthony Jones of the first degree murder of Deondre M.[1] (Pen. Code,[2] § 187, subd. (a)) with the special circumstance petitioner intentionally killed the victim while petitioner was an active participant in a criminal street gang, and the murder was carried out to further the activities of the gang (§ 190.2, subd. (a)(22)).[3] (*People v. Perkins, et al.* (May 18, 2012, F060071 [nonpub. opn.] (*Perkins*).) For this offense, petitioner ultimately was sentenced to a term of 25 years to life pursuant to section 190.5. (*People v. Jones* (May 28, 2014, F066161 [nonpub. opn.] (*Jones*).)

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95. The court summarily denied the petition at the prima facie stage on the ground petitioner was not convicted of felony murder or under a natural and probable consequences theory, and the jury's special circumstance finding established petitioner acted with intent to kill.

On appeal, petitioner contends the trial court erred in failing to issue an order to show cause because the record of conviction does not establish petitioner had the intent to kill. Petitioner further contends that if the court had issued an order to show cause, the prosecution would have been unable to prove beyond a reasonable doubt petitioner was ineligible for resentencing relief under section 1170.95. We conclude the jury's special circumstance finding establishes petitioner is ineligible for resentencing as a matter of law. Accordingly, we affirm the trial court's order denying resentencing relief pursuant to section 1170.95.

---

[1] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

[2] All further statutory references are to the Penal Code unless otherwise specified.

[3] Petitioner was convicted of additional offenses and enhancements, as described below.

2.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are briefly excerpted from our nonpublished opinion in petitioner's first direct appeal.[4]

> "Around 9:15 p.m. on February 13, 2007, gunshots were heard by residents of a house on Snapdragon Lane in Bakersfield. The residents described hearing two sets of gunshots, comprised of one or two gunshots followed by a brief pause and then a number of gunshots in quick succession. When the residents looked through their kitchen window, they saw the victim, later identified as Deondre . . . , lying in the front yard. [Deondre], who sustained multiple gunshot wounds, died from massive bleeding caused by a gunshot wound to the chest.

> "A criminalist examined eight spent cartridge casings found at the scene and expressed the opinion that all eight were fired from the same firearm. The firearm was a .40-caliber Glock semiautomatic pistol, either the Glock Model 22 or the Glock Model 23. Police investigators also recovered one live round from the scene, but it was of a different caliber than that of the eight spent cartridge casings. Investigators found a piece of copper jacketing and a copper jacketed projectile at the scene, and another projectile was collected from the autopsy. [¶] . . . [¶]

> "Torino Jackson attributed the shooting to [petitioner and his codefendant, Wayne Deshown Perkins]. Jackson testified that sometime during the afternoon on February 13, 2007, Perkins came to his house. [Petitioner] joined them later and they all hung out together on Jackson's front porch.

> "After it got dark, Jackson's friend, Nyesha H[.], came to the house and drove Jackson and [petitioner and Perkins] back to her apartment. Eventually, the three men left the apartment and got into [Nyesha]'s red, two-door Ford Escort and started driving around. Perkins was the driver, [petitioner] sat in the front passenger's seat, and Jackson sat in the backseat. While they were driving around, Jackson was busy texting on his cell phone.

> "Perkins eventually stopped the car on a residential street and got out with [petitioner], while Jackson stayed in the car. Jackson saw [petitioner

---

[4] We provide these facts for background purposes because they were cited by petitioner in his brief. However, we do not rely on these facts in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

and Perkins] walk towards a house close to where they parked. A few minutes later, [petitioner and Perkins] returned to the car and they started driving again.

"Soon after they started driving again, Jackson saw [Deondre] walking down the street. [Deondre] appeared to be talking to someone in another car. Jackson testified that, as they drove by [Deondre], Perkins asked him, 'Watts up?' [Deondre] replied, 'All day, every day.' In a prior police interview, Jackson said [Deondre] addressed them first, asking 'Watts up?' Perkins responded by asking the same question. [Deondre] then said '[a]ll day, every day' and yelled 'South' as [petitioner and Perkins]' car passed by him.

"Jackson testified that after this verbal exchange with [Deondre], Perkins drove into a cul-de-sac and turned around. Perkins then stopped the car near where [Deondre] was walking and turned off the engine and lights on the car. [Petitioner and Perkins] both got out of the car, while Jackson remained in the back seat. [Petitioner] donned a ski mask, pulling it down so it covered his whole face.

"Jackson saw [petitioner and Perkins] start walking towards [Deondre]. He was not paying close attention, however, because he was still on his phone. Suddenly, Jackson heard gunshots and ducked down. He then peeked out and saw Perkins pointing a gun at [Deondre]. Jackson heard two sets of gunshots that night.

"When the gunshots ended, [petitioner and Perkins] returned to the car. As they were driving away, Jackson observed a silver gun on [petitioner]'s lap. On direct examination, Jackson testified that there was no conversation during the drive back to [Nyesha]'s apartment, which took five to seven minutes. However, on cross-examination, Jackson testified that he remembered [petitioner] saying that his gun had jammed.

"Jackson acknowledged that he knew a person named James B[.], who had been shot and killed in February 2007. Jackson claimed he could not recall [petitioner and Perkins] discussing [James] on the drive back to [Nyesha] apartment. He only recalled that they had discussed the subject earlier that day at his house, talking about how 'messed up' it was that someone had killed [James]. However, during a prior police interview, Jackson said the shooting 'probably was a retaliation,' and reported that, during the drive back to [Nyesha's] apartment after the shooting, [petitioner and Perkins] were talking about what a 'cool person' [James] had been and how they had known him for a long time. [¶] . . . [¶]

4.

"The parties stipulated that the Eastside Crips is a criminal street gang in Kern County, as the term 'criminal street gang' is defined under section 186.22. Bakersfield Police Officer [K.] Ursery testified as a gang expert and opined that [petitioner and Perkins] were active members of the Eastside Crips and that [Torino] was an affiliate or associate of the gang. Ursery further opined that [Deondre] was affiliated with the Country Boy Crips, and testified that a longstanding rivalry existed between the East Side Crips and the Country Boy Crips. Presented with a hypothetical shooting based on the facts of this case, Ursery expressed the opinion '[t]hat it would, in fact, be in benefit of, at the direction of, and in furtherance of that particular gang.'" (*Perkins*, *supra*, F060071, fns. omitted.)

On March 15, 2010, "[a] jury convicted Perkins and [petitioner] of first degree murder (Pen. Code, § 187, subd. (a); count 1), with a gang special circumstance (§ 190.2, subd. (a)(22)), a gang enhancement (§ 186.22, subd. (b)(1)), and firearm enhancements (§ 12022.53, subds. (d), (e)(1))."[5] (*Perkins*, *supra*, F060071, fn. omitted.) On April 13, 2010, the trial court sentenced petitioner to a term of life without the possibility of parole. Additionally, the trial court imposed and stayed, pursuant to section 654, a consecutive term of 25 years to life for the vicarious firearm enhancement (§ 12022.53, subds. (d), (e)(1)), and a consecutive term of 15 years to life for the gang enhancement (§ 186.22, subd. (b)(1)). In the interests of justice, the court struck the enhancement for personal use of a firearm as unsupported by the evidence.

In petitioner's direct appeal, this court held it appeared the trial court was unaware it had discretion, under section 190.5 and due to petitioner's age, to impose a term of either life without the possibility of parole or 25 years to life for murder with a gang special circumstance. This court remanded for the trial court to hold a contested resentencing hearing to determine whether to impose a sentence of life without the possibility of parole or 25 years to life. In all other respects, the judgment was affirmed. (*Perkins*, *supra*, F060071.)

---

[5] The jury also convicted Perkins of additional offenses and enhancements. (*Perkins*, *supra*, F060071.)

On October 31, 2012, the trial court resentenced petitioner to a 25-years-to-life term for the first degree murder with the gang special circumstance and also imposed an additional term of 25 years to life for the vicarious firearm enhancement, for an aggregate term of 50 years to life. (*Jones*, *supra*, F066161.) On appeal from the resentencing, this court remanded for corrections to the abstract of judgment but otherwise affirmed. (*Ibid.*)

On July 31, 2019, petitioner, in propria persona, filed a petition for resentencing pursuant to section 1170.95. In the form petition, petitioner stated a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of first or second degree murder at trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. He also requested the court appoint counsel during the resentencing process, and stated that he was not the actual killer; did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; and was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. Lastly, petitioner stated the murder victim was not a peace officer in the performance of his or her duties.

On August 9, 2019, the trial court appointed counsel for petitioner.

On September 17, 2019, the prosecution filed a motion to dismiss based on the unconstitutionally of Senate Bill No. 1437 (2017-2018 Reg. Sess.) and petitioner subsequently filed a reply. On March 2, 2020, the prosecution filed an opposition to petitioner's petition for resentencing, arguing the jury's special circumstance finding rendered petitioner ineligible for relief. On December 11, 2020, petitioner filed a reply, arguing the jury did not find he was the actual killer, did not intend to kill the victim, and was not a major participant who acted with reckless indifference to human life.

On December 22, 2020, the trial court found petitioner ineligible for resentencing relief stating:

> "The Court has reviewed the opinion of the Court of Appeal in this case. That opinion was filed on May 18, 2012. And it appears clear from the opinion and findings of the Court of Appeal that this was not a felony murder. It was not charged as a felony murder nor was it charged under the Natural and Probable Consequences Doctrine.
>
> "And the Court will also note that the jury found the special circumstance to be true under Penal Code Section 190.2 (a)(22), that [petitioner] intentionally killed the victim while the [petitioner] was an active participant in a criminal street gang."

The trial court denied the petition and a timely appeal followed.

## DISCUSSION

### I. Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted,

7.

counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[6] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1,

---

[6] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

2019." (§ 1170.95, subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1170.95, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (§ 1170.95, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) The record of conviction includes, but is not limited to, jury instructions and verdict forms. (See generally *id*. at p. 972.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971-972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural

history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (§ 1170.95, subd. (d)(3).)

## II. Analysis

Petitioner contends the trial court erred in failing to issue an order to show cause because the record of conviction did not establish petitioner had the intent to kill. Petitioner further contends that if the court had issued an order to show cause, the prosecution would have been unable to prove beyond a reasonable doubt petitioner was ineligible for resentencing relief under section 1170.95. We disagree with the first contention and affirm the trial court's order finding petitioner ineligible for resentencing relief under section 1170.95. We therefore do not reach petitioner's second contention.

To be eligible for relief pursuant to section 1170.95, petitioner must not have been the actual killer, must not have acted with the intent to kill or malice aforethought, and must not have been a major participant in the underlying felony who acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *Gentile*, *supra*, 10 Cal.5th at p. 842.) Here, the jury found true a special circumstance pursuant to section 190.2, subdivision (a)(22), which imposes a sentence of death or life without the possibility of parole for a murder involving the defendant's active participation in a criminal street gang. (*Perkins*, *supra*, F060071.)

To find the special circumstance true, the jury was required to find petitioner intended to kill the victim. (§ 190.2, subds. (a)(22), (c); see *People v. Allison* (2020) 55 Cal.App.5th 449, 460.) Section 190.2, subdivision (a)(22) provides:

> "The defendant *intentionally killed the victim* while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (Italics added.)

Where the defendant is not the actual killer, this special circumstance applies only if the defendant, "with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree." (§ 190.2, subd. (c); accord, *People v. Fayed* (2020) 9 Cal.5th 147, 201-202.) When read together, these provisions make clear that only " 'one who intentionally aids or encourages a person in the deliberate killing of another,' " in the manner or for the reasons described by the statute, is subject to the special circumstances punishment. (*Fayed*, at p. 202; accord, *People v. Allison*, *supra*, 55 Cal.App.5th at p. 460.)

The instruction on the gang special circumstance likewise required the jury to find, in pertinent part, that " '[t]he defendant, whether or not the actual killer, acted with the intent to kill.' " (*Perkins*, *supra*, F060071.) Thus, the relevant jury instruction confirms the jury was properly instructed on the elements of the special circumstance, including the requirement that petitioner intended to kill the victim. We therefore disagree with petitioner's contention "[t]here is no distinct finding" in the record that he acted with malice aforethought or intent to kill. To the contrary, the special circumstance finding establishes the jury made the findings necessary to sustain a murder conviction under section 189, as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.). Petitioner is therefore ineligible for resentencing as a matter of law.

Petitioner contends the jury instructions, specifically the instruction detailing implied malice, establishes he may have been found guilty of first degree murder based on a natural and probable consequences theory. Again, we disagree. As an initial matter, the instruction on implied malice is not contained in the record before us. Generally, however, courts have concluded the "natural and probable consequences" language contained in the standard instruction on implied malice represents a "distinctly different concept[]" from the natural and probable consequences doctrine. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056, abrogated on another ground by *Lewis, supra*, 11 Cal.5th at p. 967; accord, *People v. Chiu* (2014) 59 Cal.4th 155, 158, abrogated on another ground

11.

by Sen. Bill No. 1437 (2017-2018 Reg. Sess.).) Regardless, even if the jury had been instructed on the natural and probable consequences doctrine, the verdict establishes petitioner was not found guilty under that theory, but rather based on his own intent to kill the victim. Accordingly, the record establishes petitioner was convicted under a theory that remains valid under section 189, as amended by Senate Bill No. 1437.

Finally, petitioner contends section 1170.95 is ambiguous with regard to the requirements for setting forth a prima facie case, and therefore the rule of lenity warrants a finding that petitioner has established a prima facie case for purposes of determining eligibility. Specifically, petitioner contends the information allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine and, although instructions on these theories were not given, he was convicted of murder solely based on his active participation in a criminal street gang. We again disagree. Petitioner was convicted based on his own mental state. Although it is clear petitioner was not the actual killer, Senate Bill No. 1437 (2017-2018 Reg. Sess.) did not "eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought" (*Gentile*, *supra*, 10 Cal.5th at p. 848), and it is clear the jury made a finding that petitioner had the intent to kill.

## DISPOSITION

The order denying petitioner's section 1170.95 petition is affirmed.